STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       david_rizk@fd.org


Counsel for Defendant LEE


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN LEE,<br><br>Defendant. | **Case No.:** CR 19-00419 SI<br><br>**NOTICE OF MOTION AND MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582** |

TO: DAVID L. ANDERSON, UNITED STATES ATTORNEY, NORTHERN DISTRICT OF CALIFORNIA; AND CHRISTOPHER VIEIRA, SPECIAL ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTE that on May 10, 2020, Defendant John Lee will move for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582.  This motion will be based on the following memorandum, all relevant statutory provisions, case law, administrative materials, and such argument as the Court will entertain at the hearing.  Given the time sensitive nature of this motion, Mr. Lee requests that the matter be heard by the Court on May 15, 2020, pursuant to the accompanying Motion to Expedite Briefing and Hearing.

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II. JURISDICTION ................................................................................................ 2

III. FACTUAL BACKGROUND ............................................................................ 2

    A. Mr. Lee's risk factors put him at risk of serious illness or death from coronavirus ...... 2

    B. Mr. Lee's background and need for addiction treatment ................................................ 4

    C. The underlying case and the Court's original sentence. ................................................ 5

    D. Conditions at Santa Rita Jail place Mr. Lee, given his risk factors, at significant risk of serious illness or death. ................................................................................................ 5

IV. ARGUMENT .................................................................................................... 7

    A. "Extraordinary and compelling reasons" exist to resentence Mr. Lee to time served in order to save him from a risk of serious illness or death. ................................................ 7

    B. The BOP's failure to grant Mr. Lee compassionate release request should not be credited given BOP's unsuccessful history administering the compassionate release program, and the Congress' reforms in the FSA. ........................................................................... 10

    C. Mr. Lee has served over two thirds of his sentence, and can receive residential drug counseling or shelter in place at home; the § 3553(a) factors counsel in favor of resentencing to time served. ............................................................................................................. 11

    D. In the alternative, the Court should recommend that Mr. Lee be transferred to home confinement. ................................................................................................................. 13

V.  CONCLUSION ................................................................................................ 13

## I.  INTRODUCTION

Defendant John Lee respectfully moves this Court pursuant to the First Step Act (FSA) for an order granting compassionate release and resentencing him to a time served sentence, followed by a three-year term of supervised release.  A lifelong San Francisco resident and recovering heroin addict who pled guilty to selling a small amount heroin, Mr. Lee has already served approximately eight months in Santa Rita Jail of his sentence of twelve months and one day.  His projected statutory release date is July 25, 2020.[1]  Mr. Lee is at risk of serious illness or death if he is infected by the coronavirus.  He is 50 years old and has suffered from moderate to severe asthma since he was a child.  He was prescribed an inhaler of Albuterol that he must use twice a day, and he experiences wheezing daily, and shortness of breath periodically.  Family members confirm that Mr. Lee often coughs and is short of breath.  In addition, Mr. Lee is a long time pack-a-day smoker, which is linked to immunodeficiency.  Both of these are risk factors according to the Center for Disease Control (CDC).  As the Court is no doubt aware, coronavirus is in Santa Rita Jail, and Mr. Lee is in a unit that was recently placed under quarantine due to exposure to deputies who tested positive.  According to the Sheriff, there have been 51 confirmed coronavirus cases among inmates and staff— a significant increase from just a few days ago.[2]  Mr. Lee is understandably very concerned for his health.  Troublingly, Santa Rita took away Mr. Lee's inhaler several weeks ago just when he needs it most—placing him at even greater risk.  If Mr. Lee were resentenced to time served and released from custody, he could either shelter in place at home with his wife of 17 years, Latonya Hooper, or commence the 6-month program of residential drug treatment the Court ordered (at his request) as part of his term of supervised release.  If the Court declines to resentence him, Mr. Lee alternatively requests a judicial recommendation for home confinement.

---

[1] *See* BOP Inmate Locator – John Lee, BOP Reg. No. 25800-111, *at* https://www.bop.gov/inmateloc/ (last accessed May 7, 2020).

[2] Alameda County Sheriff, COVID-19 Update (May 10, 2020) *at* https://www.alamedacountysheriff.org/admin_covid19.php.

MOTION TO REDUCE SENTENCE
LEE, CR 19-00419 SI

## II.  JURISDICTION

On December 21, 2018, the President signed the FSA into law.  Among the reforms, Congress amended 18 U.S.C. § 3582 to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence based on extraordinary and compelling reasons "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).

Mr. Lee has exhausted his administrative remedies with BOP.  On April 14, 2020, defense counsel submitted an administrative request for compassionate release (or home confinement) to the BOP Western Region Residential Reentry Management Center (RRM), which is considered by BOP regional counsel to be the equivalent of the warden for Santa Rita Jail.  Rizk Decl., Ex. A.  No response was received.  *Id.* ¶ 2.  As a matter of law, Mr. Lee therefore exhausted his administrative remedies at least as of May 14, 2020, *i.e.*, "30 days after the receipt of [his] request by the warden of the defendant's facility."  *See* 18 U.S.C. § 3582(c)(1)(A).

## III.  FACTUAL BACKGROUND

### A.  Mr. Lee's risk factors put him at risk of serious illness or death from coronavirus.

Mr. Lee has suffered from moderate to severe asthma[3] since he was a child.  Lee Decl. ¶ 2.  When he was approximately 16 years old, he was playing basketball at a gym and had a severe asthma attack that required him to be hospitalized.  *Id.*  Now, he experiences wheezing from asthma every day, and significant shortness of breath from time to time.  *Id.* ¶ 3.  He also suffers breathing problems, shortness of breath, and airway obstruction virtually every night—preventing him from sleeping.  *Id.*  Mr. Lee's wife confirms he frequently suffers from asthma attacks, even when walking up stairs, or undertaking other light activity, and that he uses an inhaler.  Hooper Decl. ¶¶ 7-8.  Unfortunately, Mr. Lee also has a bad habit of smoking cigarettes and smoked approximately a pack

---

[3] *See* Gene L. Colice, M.D., *Categorizing Asthma Severity: An Overview of National Guidelines*, CLIN. MED. RES., vol. 2, issue 3: 155-63 (Aug. 2004) *at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1069088/ (May 7, 2020) (defining severe asthma as having "continual [daytime] symptoms, limited physical activity, frequent exacerbations" and "frequent nighttime symptoms.").

a day from the age of 15 until he was arrested in this case.  Lee Decl. ¶ 4.  Regrettably, he has also smoked narcotics throughout my life, further contributing to his respiratory problems.  *Id.*

As the Court is likely aware, moderate to severe asthma and smoking-related immunodeficiency are serious risk factors for coronavirus, according to the CDC.[4]  The CDC warns: "People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease."[5]  The CDC recommends that those who suffer from moderate to severe asthma should: "[k]eep your asthma under control," "[c]ontinue your current medications, including inhalers…" and "don't stop any medications or change your asthma treatment plan."[6]

Likewise, smoking is associated with secondary immunodeficiency: "Secondary immunodeficiency (SID) refers to an acquired immunodeficiency secondary to an extrinsic cause (e.g. disease, treatment) and can occur when any condition or treatment causes a reduction in number or function of immune components. … Issues with general health that result in SID include malnutrition, advancing age, smoking and alcohol."[7]  As to smoking, the CDC advises: "Many conditions can cause a person to be immunocompromised, including … smoking…."[8]  According to the University of California San Francisco (UCSF), as of April 16, 2020, there were 12 scientific papers published on the impact of smoking the coronavirus disease progression.[9]  Examining these

---

[4] *See* CDC, Coronavirus Disease 2019 (COVID-19), Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (May 7, 2020).

[5] *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Moderate to Severe Asthma, *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (May 7, 2020).

[6] *Id.*

[7] Rizk Decl., Ex. B (Bright, Philip and Richter, Alex (May 2017), Immunodeficiency: Secondary. In: eLS. John Wiley & Sons, Ltd. (abstract)).

[8] *See* CDC, Coronavirus Disease 2019 (COVID-19), People Who Are at Higher Risk for Severe Illness, *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (May 7, 2020).

[9] Stanton A. Glantz, Ph.D., UCSF Center for Tobacco Control Research and Education, *Reduce your risk of serious lung disease caused by corona virus by quitting smoking and vaping*, *at*

studies, UCSF concluded: "Our meta-analysis of these 12 papers found that *smoking was associated with more than a doubling of odds of disease progression* in people who had already developed COVID."[10]

**B. Mr. Lee's background and need for addiction treatment.**

Mr. Lee was raised in San Francisco and has spent most of his life in Bay View-Hunter's Point, the Fillmore, and the Tenderloin neighborhoods. PSR ¶ 66; Def's Sent'g Memo, ECF No. 25 at 2. He attended George Washington Carver Elementary School in Bayview-Hunter's Point and was an excellent student. *Id.* ¶ 68. He graduated from Galileo High School in 1987.[11] *Id.* ¶ 82. Although raised within a tight family, Mr. Lee was exposed to poverty and devastating violence in the Sunnydale and Fillmore housing projects that resulted in the loss of several friends and family members, including his cousin and his older brother James. *Id.* ¶ 68-70. Mr. Lee himself was shot in a drive by shooting at age 18. *Id.* ¶ 68.

As a teenager, he tried cocaine and quickly became addicted. *Id.* ¶ 71. Drugs became a way of coping with violence and other disappointments in his life. In his forties, Mr. Lee became addicted to heroin and used every day for years. *Id.* During his Probation interview, Mr. Lee explained his self-medication with substances: "It was just a part of my life. It makes me emotional because I had nowhere to go. I never had anybody to talk to about this stuff. It just caused me to use more and more." ECF No. 25 at 6. Sadly, drugs led Mr. Lee to commit crimes. He committed virtually all of his crimes due to impaired judgment under the influence of narcotics. Although Mr. Lee committed several serious crimes twenty to thirty years ago, all of Mr. Lee's offenses since 2001 have been drug or property crimes related to poverty and his addiction. PSR ¶¶ 26, 27, 31, 33, 34, 35, 36.

---

https://tobacco.ucsf.edu/reduce-your-risk-serious-lung-disease-caused-corona-virus-quitting-smoking-and-vaping (May 7, 2020).

[10] *Id.* (emphasis added).

[11] In the community and within his family, Mr. Lee has been an advocate for education. He has pushed his own children to complete high school, and starting in 2012 he volunteered for several years to help students with homework in after school programming (during this period, from 2012-18, Mr. Lee succeeded in avoiding any trouble with the law although he continued to struggle with addiction). *Id.* ¶ 71.

### C.  The underlying case and the Court's original sentence.

On August 15, 2019, Mr. Lee sold an undercover police officer $25 worth of heroin.  PSR ¶ 7.  When searched, he also had small amounts of marijuana and cocaine.  *Id.* ¶ 9.  He was cited and released on the spot.  *Id.*  Mr. Lee was then federally charged on September 5, 2019 with three counts of distribution and possession with intent to distribute heroin and cocaine.  ECF No. 1.  He plead guilty on November 6, 2019, *see* ECF No. 18, and was sentenced by this Court to twelve months and a day of custody, followed by three years of supervised release.  ECF No. 31.  At sentencing, Mr. Lee allocuted with emotion, thanked the Court for the intervention this case and his sentence represents, and promised the Court he would take advantage of residential drug treatment.[12]

Mr. Lee has now been sober approximately nine months.  During the course of his case, Mr. Lee realized he used drugs to escape the traumas he experienced throughout his life.  Mr. Lee has never been to residential treatment, and therefore asked the Court to provide him with six months of drug programming when he is released.  *Id.* ¶ 79.  The Court granted this request and also provided mental health counseling.  ECF No. 31.  If resentenced to time served, Mr. Lee could begin his residential drug treatment programming or shelter in place with his wife, Ms. Hooper, at her residence in Stockton, California.[13]  Hooper Decl. ¶ 8.  At home, his basic needs will be met and he will have access to superior medical care at Sutter Stockton.  *Id.* ¶5.

### D.  Conditions at Santa Rita Jail place Mr. Lee, given his risk factors, at significant risk of serious illness or death.

Mr. Lee is very afraid he could get seriously ill or worse in custody at Santa Rita Jail.  As of now, there are 1,1938 coronavirus cases in Alameda County and 69 deaths.[14]  At Santa Rita Jail, according to the Sheriff, there have been 51 confirmed coronavirus cases among inmates and staff.[15]

---

[12] The defense has ordered a transcript and will provide it to the Court as soon as it is prepared.
[13] The defense alerted U.S. Probation to Mr. Lee's anticipated compassionate release request several weeks ago, and understands the matter was referred to the Eastern District of California Probation Office for follow-up investigation.
[14] *Coronavirus in California: Map and Case Count*, The New York Times (May 8, 2020), *at* https://www.nytimes.com/interactive/2020/us/california-coronavirus-cases.html (updated regularly).
[15] Alameda County Sheriff, COVID-19 Update (May 10, 2020) *at* https://www.alamedacountysheriff.org/admin_covid19.php.

This is a significant increase from just a few days ago.  Twenty-one "red" inmates are showing coronavirus symptoms and are very ill; thirteen "yellow" housing units (with an unknown number of inmates) are in isolation due to fears those there are particularly vulnerable; and another 65 "orange" inmates are in quarantine due to exposure with suspected or known coronavirus.[16]  These numbers may understate the scope of infections because testing is limited.  Out of approximately 1,742 inmates, 167 have been tested with approximately 30% of those (49 inmates) testing positive and with some results (3) still pending.  *Id.*

As the Court is no doubt aware, social distancing and appropriate preventative measures are virtually impossible in custodial environments.[17]  Mr. Lee is currently incarcerated at Santa Rita Jail in Unit 4D.  Lee Decl. ¶ 5.  When he arrived at Santa Rita Jail, he was prescribed an Albuterol inhaler, which he used frequently.  *Id.*  For unknown reasons, several weeks ago, the Santa Rita Jail medical staff informed Mr. Lee that he supposedly did not need the inhaler, and stopped offering it. *Id.*  He has requested that the inhaler be returned because he still needs it, but has not yet received a response. *Id.*  As noted above, the CDC specifically recommends that asthmatics continue all medication regimes, including inhalers, to minimize their risk to coronavirus.

There are approximately 30 inmates in Mr. Lee's pod.  *Id.* ¶ 6.  He reports that the unit is generally very dirty.  *Id.*  He lives in shared cell with another inmate; they share a bunk bed.  *Id.*  There is insufficient space for effective social distancing in the unit.  *Id.*  There is a common mess area for food, common showering area, and common bathrooms.  *Id.*  The inmates receive one mask, one bar of soap, and three small packets of hand sanitized, per week.  *Id.*  Like many other inmates, Mr. Lee is trying to stay in his cell as much as time to minimize exposure, which is very difficult.  In early April, Unit 4D was placed on quarantine, apparently due to exposure to deputies who were exposed to coronavirus in another unit.  *Id.* ¶ 7.  In late April, two inmates who tested positive for coronavirus and supposedly had recovered were returned to Mr. Lee's pod, and remain there with

---

[16] *Id.*

[17] *See, e.g., Prisons are 'in no way equipped' to deal with COVID-19*, Talha Burki, THE LANCET, May 2, 2020, vol. 395, issue 10234, pp. 1411-12, *at* https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30984-3/fulltext (May 7, 2020).

MOTION TO REDUCE SENTENCE
LEE, CR 19-00419 SI

him to this day.  *Id.*  According to the CDC, however: "The onset and duration of viral shedding and the period of infectiousness for COVID-19 are not yet known."[18]

Since the pandemic hit, the jail has now restricted all visits.[19]  No attorney, family, friends, or even experts are allowed into the jail.  Programming at the jail has also been discontinued.[20]  Prior to the pandemic, Mr. Lee had been substance abuse and parenting classes at Santa Rita for approximately four months.  *Id.* ¶ 8.  Mr. Lee has had no disciplinary issues whatsoever while in custody.  *Id.*

## IV.  ARGUMENT

### A.  "Extraordinary and compelling reasons" exist to resentence Mr. Lee to time served in order to save him from a risk of serious illness or death.

This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A), which states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"  In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

As relevant here, the examples of "extraordinary and compelling reasons" in U.S.S.G. § 1B1.13 include that Mr. Lee is, by virtue of his coronavirus risk factors, "suffering from a physical or medical condition" that "substantially diminishes the ability of [Mr. Lee] to provide self-care *within the environment of a correctional facility* and from which he or she is not able to recover."  U.S.S.G. § 1B1.13, App. Note 1 (emphasis added).  Consistent with the standard, Mr. Lee cannot effectively provide self-care for himself at this moment in Santa Rita Jail.  His risk factors, from

---

[18] *See* CDC, Coronavirus Disease 2019 (COVID-19), Clinical Questions about COVID-19: Questions and Answers – updated May 6, 2020, *at* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Transmission (May 8, 2020).

[19] Alameda County Sherriff, Santa Rita Jail COVID-19 Outbreak Control Plan, *at* https://alamedacountysheriff.org/files/COVIDPlan04-05-2020.pdf (May 7, 2020).

[20] *Id.*

which he cannot "recover," combined with coronavirus' spread into Santa Rita and the crowded custodial environment in his unit, which does not permit effective social-distancing or other preventative measures, constitute extraordinary and compelling reasons to resentence Mr. Lee to time served.  Particularly troublingly, the jail's decisions to return positive inmates to Unit 4D, and to take away Mr. Lee's Albuterol inhaler several weeks ago, placed him at special—and completely unnecessary—risk of serious illness.

Numerous courts, including this one, have arrived at this conclusion and granted motions for compassionate release on very similar grounds. *United States v. Trent*, Case No. 16-CR-178 WHA, ECF No. 106 (N.D. Cal. Apr. 9, 2020) ("Confined to a small cell where social distancing is impossible, Trent cannot provide self-care because he cannot protect himself from the spread of a dangerous virus."); *United States v. Burrill*, No. 17-CR-00491 RS, ECF No. 308 (N.D. Cal. Apr. 10, 2020) (granting compassionate release on same grounds); *see also United States v. Rodriguez*, 03-CR-0271 AB, ECF No. 135 (E.D. Pa. Apr. 1, 2020) ("the outbreak of COVID-19 and underlying medical conditions that place [defendant] at a high risk should he contract the disease" justified release); *United States v. Zukerman*, No. 1:16-cr-194-AT, ECF No. 116 (S.D.N.Y. Apr. 3, 2020) ("[t]he severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include a great and unforeseen risk of severe illness or death' brought on by a global pandemic.").[21]

In addition, U.S.S.G. § 1B1.13, App. Note 1(D), provides a catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in

---

[21] *See also United States v. Colvin*, No.19-cr-00179, 2020 WL 1613493 (D. Conn. Apr. 2, 2020); *United States v. Hernandez*, No. 18-cr-00834, 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020); *United States v. Resnick*, No. 14-cr-00810, 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020); *United States v. Edwards*, No. 17-cr-00003, 2020 WL 1650406 (W.D. Va. Apr. 2, 2020); *United States v. Perez*, No. 17-cr-00513, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020); *United States v. Rodriguez*, No. 03-cr-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020); *United States v. Gonzales*, No. 18-cr-00232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020); *United States v. Muniz*, No. 09-cr-00199, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16-cr-00078, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020).

MOTION TO REDUCE SENTENCE
LEE, CR 19-00419 SI

subdivisions (A) through (C)" as determined by the Director of BOP.  Because this policy statement was passed by the Sentencing Commission prior to the FSA (and the Sentencing Commission remains without a quorum), the majority of courts have found that the sentencing court may assume the discretion exercised by the Director of BOP in determining whether such "other" "extraordinary and compelling reasons" to resentence the defendant in the absence of a new policy statement.  *See, e.g.*, *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019) (stating that the existing policy statement provides "helpful guidance," but "is not ultimately conclusive given the statutory change").

In *United States v. Redd*, for example, the court explained that "Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance."  *United States v. Redd*, No. 97-CR-00006 AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) (citing cases).  Numerous other courts have agreed (including this Court) and held that the sentencing court may exercise its discretion to identify such "other" "extraordinary and compelling" reasons to resentence.  *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).[22]  Many of these decisions have been handed down in opinions granting compassionate release to inmates who have coronavirus risk factors like Mr. Lee.[23]

---

[22] *See also United States v. Brown*, 411 F. Supp. 3d 446, 450 (S.D. Iowa Oct. 8, 2019); *United States v. Urkevich*, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Ebbers*, --- F. Supp. 3d ----, 2020 WL 91399, at *4 & n. 6 (S.D.N.Y. Jan 8, 2020); *United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Maumau*, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020); *United States v. O'Bryan*, 2020 WL 869475, at *2 (D. Kansas Feb. 21, 2020); *United States v. Young*, 2020 WL 1047815 at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. Redd*, 2020 WL 1248493, at * 7 (E.D. Va. Mar. 16, 2020); *United States v. Owens*, 97 CR-2546, ECF No. 93 at *4 (S.D. Cal. Mar. 23, 2020); *United States v. Decator*, 2020 WL 1676219, at *2-3 (D. Md. Apr. 6, 2020).

[23] *See, e.g., United States v. Rodriguez*, No. 03-CR-00271-AB, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020); *United States v. Kataev*, 16 Cr. 763-05, 2020 WL 1862685, at *2 (S.D.N.Y. Apr. 14, 2020); *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596, at *4

9

1    Thus, Mr. Lee submits that this additional ground provides a basis for granting the motion.

2    Specifically, the extraordinary public health crisis created by the coronavirus, the impossibility of

3    maintaining social distancing at Santa Rita, the fact that the virus has already entered the jail and

4    Unit 4D, as well as Mr. Lee's own personal vulnerability to the disease due to his asthma and

5    smoking history, and the jail's decisions to return previously positive inmates to Mr. Lee's unit, and

6    to take away his inhaler when he needs it most, all support the conclusion that resentencing is

7    appropriate in this case.

8    **B. The BOP's failure to grant Mr. Lee compassionate release request should not be credited given BOP's unsuccessful history administering the compassionate release program, and the Congress' reforms in the FSA.**

9

10   This Court should not give weight to the BOP's failure to grant Mr. Lee compassionate release

11   or home confinement.  As of April 23, 2020, the Director of the National Sentencing Resource

12   Council reported that her office is not aware of a single case in which the BOP has agreed to

13   compassionate release due to the coronavirus epidemic.  Rizk Decl., ¶ 1.  This is not surprising,

14   unfortunately.  The reason for the FSA's inclusion of defense-filed motions was the "documented

15   infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants."

16   *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020).

17   Accordingly, "while the First Step Act did preserve the BOP's role relative to a sentence reduction in

18   certain limited respects, it eliminated the BOP Director's role as the exclusive channel through which

19   a sentence reduction could be considered by courts."  *Id.* (emphasis in original).  Further, the FSA's

20   amendment to § 3582(c)(1)(A) reflects the congressional aim to diminish the BOP's control over

21   compassionate release by permitting defendants to file sentence reduction motions directly with the

22   sentencing court.  The BOP's administration of the compassionate release program has long been the

23   subject of criticism, and it appears that it continues to fail during the current crisis.  Thus, the BOP's

24   failure to grant Mr. Lee compassionate release (or home confinement) should not be given any

25   weight.

26

27   _____

28   (W.D. Wash. Apr. 14, 2020); *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020).

MOTION TO REDUCE SENTENCE
LEE, CR 19-00419 SI

**C. Mr. Lee has served over two thirds of his sentence, and can receive residential drug counseling or shelter in place at home; the § 3553(a) factors counsel in favor of resentencing to time served.**

In considering Mr. Lee's motion, the Court should consider post-offense developments under 18 U.S.C. § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Pepper v. United States,* 562 U.S. 476, 490-93 (2011).

*First*, of course, a serious pandemic to which Mr. Lee is uniquely vulnerable is spreading through the Bay Area and Santa Rita Jail, specifically, and has decimated many jails and prisons. Although the defense appreciates that the Alameda Sheriff is taking some precautions to protect inmates, the reality is that jails and prisons are uniquely dangerous environments for people like Mr. Lee right now.  Likewise, although the Sheriff has taken some steps to try to mitigate the danger for at-risk inmates, the jail does not have the resources to isolate fully all vulnerable inmates like Mr. Lee, nor does it have coronavirus testing kits adequate to monitor the inmates.  Indeed, the return of inmates who tested positive to pods with vulnerable inmates like Mr. Lee is particularly troubling given the evidence that the duration of viral shedding and infectiousness is not yet known.  Should Mr. Lee become ill, Santa Rita may not even discover it for some time, and he may be delayed in receiving life-saving medical care.  Worse, the jail interrupted Mr. Lee's inhaler regimen at a time that places him at particular risk—contrary to prevailing medical guidelines and CDC recommendations.  By contrast, at home, Mr. Lee can shelter in place with his family, and immediately report to Sutter Stockton if he becomes ill.  The sentencing statute specifically contemplates "the need for the sentence imposed … to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *see* § 3553(a)(2)(D), and under the circumstances, the defense submits, consideration for Mr. Lee's health deserves great weight.

*Second*, and equally importantly, Mr. Lee has served the great majority of his relatively short sentence already, and he remains sober, and ready to embark on the next step of rehabilitating himself through residential drug treatment.  He has also participated in significant drug rehabilitation and parenting classes at Santa Rita.  Of course, Mr. Lee has not had any disciplinary problems while

1    in custody.  Again, the sentencing statute supports resentencing given Mr. Lee's positive record and

2    rehabilitation.  *Id.*

3           *Third*, Mr. Lee no longer poses a threat to himself or the community.  He has not committed

4    any violent crimes in twenty years, and his advancing age and sobriety are sure to put an end to his

5    addiction-driven criminal conduct.  If he were released, Mr. Lee would go either to a residential drug

6    treatment program for six months where he would maintain his sobriety and advance his recovery, or

7    go to shelter at home in Stockton with his family.  In either case, he will be removed from the

8    neighborhoods in San Francisco where he has previously struggled with drug abuse.  Notably, he

9    also remains under a Tenderloin stay-away order, and would be willing to stipulate to other

10   restrictions as conditions of his supervised release to provide the Court with confidence that he will

11   remain healthy and drug-free.  Of course, if Mr. Lee were to relapse, the Court retains supervision

12   over him and may remand him to custody or modify the terms of his supervised release.  18 U.S.C. §

13   3563(c); Fed. R. Crim. P. 32.1(a).

14          *Fourth*, in terms of just punishment, deterrence, promoting respect for the law, and public

15   safety, several considerations are relevant.  Again, Mr. Lee has already served approximately eight

16   months of roughly ten months of actual custody.  That time in jail is significantly longer than any

17   other time he has ever actually served since 2001, and as such, it has sent a message to Mr. Lee that

18   he must remain clean and lawful.  Further, this is an exceptionally difficult to time to serve a

19   sentence.  All programming and visitation has ended.  Inmates' and their families' health and safety

20   is at risk.  Conditions in the jail are tense and anxious.  Time served now is much harder than time

21   served under normal circumstances and conditions are not likely to change anytime soon.  When Mr.

22   Lee was sentenced in February 2020, neither the parties nor the Court could have anticipated what

23   has occurred over the last several months.  Thus, the time Mr. Lee has spent in Santa Rita since the

24   Court imposed its sentence prior to the pandemic should be considered a much harsher sanction than

25   it would ordinary be.  Mr. Lee has already been punished sufficient to satisfy the Court's purposes in

26   handing down its original sentence.  Leaving Mr. Lee in Santa Rita Jail for another two or more

27   months, by contrast, exposes him to a serious risk of severe illness or death—a far greater sanction

28   than is appropriate or necessary in this case, per § 3553(a).

12

MOTION TO REDUCE SENTENCE
LEE, CR 19-00419 SI

**D.  In the alternative, the Court should recommend that Mr. Lee be transferred to home confinement.**

With his request for compassionate release to the BOP Residential Reentry Management Center, Mr. Lee also requested home confinement.  BOP did not respond to his request.  Courts, however, frequently make post-sentence recommendations that the BOP consider a halfway house or home detention placement—those recommendations are one of the factors considered under 18 U.S.C. § 3621(b).  Several courts have made those recommendations during this COVD-19 global pandemic. *United States v. Fobbs*, No. 19-CR-410 WHA, ECF No. 32 (N.D. Cal. Apr. 7, 2020) ("For the reasons stated on the record and given defendant's heightened susceptibility to a severe coronavirus infection, the Court RECOMMENDS to BOP that defendant be placed in home confinement for the remainder of his custodial sentence."); *United States v. Powell*, No. 94-cr-316, ECF No. 95 (D.D.C. Mar. 24, 2020) ("Given the current COVID-19 global pandemic and the parties' joint request, the Court recommends that the Bureau of Prisons immediately place Samuel Powell into home confinement to serve the remainder of his prison term" under conditions).  Should the Court deny Mr. Lee's request for compassionate release for any reason, Mr. Lee respectfully requests that the Court make a judicial recommendation for home confinement to BOP.

**V.  CONCLUSION**

For the foregoing reasons, Mr. Lee respectfully requests that the Court resentence him to time served followed by three years of supervised release.


Respectfully submitted,


May 10, 2020                                  STEVEN G. KALAR
Date                                         Federal Public Defender
                                             Northern District of California

                                             _____/S_____
                                             DAVID RIZK
                                             Assistant Federal Public Defender